UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In re:<br><br>Van Woo<br><br>Debtor. | Case No. 20-11645<br>Chapter 7 |
| American Nation Bank,<br><br>Plaintiff,<br><br>v.<br><br>Van Woo,<br><br>Defendant. | Adv. Proc. No. 21-01024-M |

### DEFENDANT'S OBJECTION AND RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendant Van Woo ("Woo") presents the following objections and response to Plaintiff American Nation Bank's ("Bank") Motion for Summary Judgment and Brief in Support filed October 2, 2022, in this case (Doc. 23) ("MSJ").

### WOO'S RESPONSE TO BANK'S ADMISSIONS

In response to Bank's listing of admissions[1] contained in the MSJ (Section I.A, page 2), Woo responds as follows:

1. Woo does not dispute Admission No. 1.

2. Woo does not dispute Admission No. 2.

3. Woo does not dispute Admission No. 3.

---

[1] References to the list of admissions are herein referred to as "Admission No.____."

4.      Woo does not dispute Admission No. 4.

5.      Woo does not dispute Admission No. 5.

6.      Woo does not dispute Admission No. 6.

7.      Woo admits the allegations contained in Admission No. 7 to the extent that he is a radiation oncologist who generates substantial income from his practice. Any remaining allegations contained in Admission No. 7 are disputed.

8.      Woo does not dispute Admission No. 8.

9.      Woo does not dispute Admission No. 9.

10.      Woo does not dispute Admission No. 10.

11.      Woo does not dispute Admission No. 11.

12.      Woo does not dispute Admission No. 12.

13.      Woo does not dispute Admission No. 13.

14.      Woo does not dispute Admission No. 14.

## **WOO'S RESPONSES TO BANK'S STATEMENT OF MATERIAL UNDISPUTED FACTS[2]**

In response to Bank's listing of alleged additional, undisputed, material facts[3] contained in the MSJ (Section I.B, page 5), Woo responds as follows:

15.      Woo does not dispute Bank's Fact No. 15.

16.      Woo disputes Bank's Fact No. 16. Woo testified that he had not a personal (non-trust) checking account since 2011, not since 2017, as Bank Fact No. 16 states. *See* Exhibit 4 to

---

[2] References to Plaintiff's Responses to Bank's undisputed material facts are herein individually referred to as "Woo's Response No.\_\_\_\_\_" and collectively as "Woo's Responses."

[3] References to Bank's alleged material undisputed facts are herein referred to as "Bank's Fact No.\_\_\_\_."

MSJ, p. 18:14-17. Bank's Fact No. 16 infers that Woo closed any personal account after the entry of the Bank's state court judgment against him. Woo further disputes Bank Fact No. 16 to the extent that it states that he has not kept proper records regarding the disposition of the cash from his paychecks. The disposition of these funds can be arrived at by viewing Woo's paychecks for 2018-2020, the bank records of The Karen Woo Revocable Living Trust, and Woo's credit card statements for these periods. *See* Exhibit 1, Affidavit of Karen Woo, ¶ 2 and Exhibit 1.1 attached thereto and Exhibit 2, Affidavit of Van Woo, ¶¶ 2 and 3 and Exhibit 2.1 attached thereto. Woo also disputes Bank Fact No. 16 because the amounts of Woo's annual income cited by Bank are from his Form 107, Statement of Financial Affairs for Individuals Filing for Bankruptcy[4] and are *gross* income amounts as required by that form. Those sums do not represent the amount of cash Woo received from his employment for the years in question. In fact, during 2018-2020, $357,608.30 in various state and federal taxes were withheld from Woo's paychecks and during the same period $127,544.36 was garnished by the Bank from Woo's checks, for a total of $485,152.66. *See*, Exhibit 2, ¶ 4. So the cash available to him was considerably less than the $550,000-$600,000 the bank alleges he can't account for. Moreover, after his paychecks were reduced by taxes and garnishments, Woo testified that he would pay his expenses and then he would give the remaining cash to his wife's, Karen Woo's ("Karen"), trust to use for other expenses of their household. *See* Exhibit 3, Deposition of Van Woo dated June 10, 2022, p. 13:15-19.

17. Woo disputes Bank's Fact No. 17. Despite Karen's testimony, she also could have arrived at the disposition of this cash by reviewing Woo's paychecks, credit card statements and the bank records of her trust. *See* Exhibits 1.1, 2 and 2.1.

---

[4] Doc. 26 in Case 20-11645-M, U.S. Bankruptcy Court, Northern District of Oklahoma ("Bankruptcy Case").

18. In response to Bank's Fact No. 18, Woo responds to each subpart as follows:

   a. Woo does not dispute Bank's Fact No. 18a is established by Woo's deposition testimony but disputes that it is established by Karen's testimony.

   b. Woo disputes that Bank Fact No. 18b is established by either his testimony or Karen's testimony. In his testimony, Woo testified that he hadn't had a checking account since 2011, not since 2017, the date the Bank obtained its judgment against him. *See* Exhibit 4 to MSJ, p. 18:14-17.

   c. Woo disputes Bank Fact No. 18c. First, the period in question is not clearly set out in the MSJ. Second, as previously discussed, the amount of cash received by Woo during the periods cited in his deposition was not in excess of $500,0000, it was less than this amount due, at least in part, to taxes and Bank's garnishments. *See*, Exhibit 2, ¶ 4 and Exhibit 2.1.

   d. Woo disputes Bank Fact No. 18d. For the reasons previously discussed, Woo disputes that he received more than $500,000 in cash and that he has no records of the disposition of these funds.

   e. Woo disputes Bank Fact No. 18e for the same reasons.

19. Woo does not dispute Bank's Fact No. 19.

20. Woo does not dispute Bank's Fact No. 20.

21. Woo does not dispute Bank's Fact No. 21 in that Exhibit 7 to the MSJ is a purported expert report by David Payne and that Exhibit 8 to the MSJ is a supplement to that report. However, Woo does not concede Mr. Payne's qualification as an expert qualified to testify in this case.

22. Woo disputes Bank's Fact No. 22. Mr. Payne testified that people in his firm offered "supporting analytical assistance" in preparing his report which he testified as work that included

reviewing documents. *See* Exhibit 4, Deposition of David Payne dated October 14, 2022, p. 9:13-10:17. So to state that Mr. Payne personally reviewed each of the 500 materials listed in Appendix C to his report is not necessarily true. In fact, nowhere in his report does Mr. Payne states that he reviewed 500 documents. He testified that Appendix C to his report consists of "summaries of more voluminous information." *See* Exhibit 4, p. 11:24-12:11.

23. Woo disputes Bank's Fact No. 23. This statement mischaracterizes what is set forth in Appendix A to Mr. Payne's report. Appendix A states that Mr. Payne has over 100 "Professional and Expert Assignments," which involve alter ego, fraudulent conveyance, badges of fraud, etc. *See* Exhibit 7 to MSJ, Appendix A, p. 2. That doesn't necessarily mean that Mr. Payne was qualified as an expert by a court in each of those cases. Mr. Payne has also not received any professional designation as a fraud examiner. *See* Exhibit 4, p. 13:1-9. Mr. Payne's report also includes a rather obvious misstatement. It includes 11 factors which he states are "set forth in uniform fraudulent transfers acts/statements" and 14 factors set forth in the "Internal Revenue Code." *See* Exhibit 7 to MSJ, p. 2-3. However, Mr. Payne testified that these factors are not actually set forth in any specific statute or in the Internal Revenue Code. *See* Exhibit 4, p. 16:5-17:8. Finally, Mr. Payne states in his report that none of his opinions stated therein are legal opinions. *See* Exhibit 7 to MSJ, p. 5, "Summary Statement of Findings, Observations and Opinions." However, he proceeds to do exactly that on at least 2 occasions. *See* Exhibit 7 to MSJ, p. 17 ("the Summation membership units and related tax benefits, may be considered equitable property of the estate under § 541…"); p. 18 ("Karen Woo is an insider according to my experience and training with the definition set forth in Section 101 of the Bankruptcy Code."). Given the obvious contradictions and errors in his report, the Court should not accept Mr. Payne as an expert and

certainly not on the basis of his report alone. The Court should disregard any of Bank's facts based solely on Mr. Payne's report.

24. Woo disputes Bank's Fact No. 24. In addition to renewing his objection to Mr. Payne's qualification as an expert, Woo disputes that the sum set forth in the fact are without records or documentation; the MSJ does not establish this fact by admissible evidence independent of Mr. Payne's report. Such a fact would need to be established by introduction of the bank account in question, which the MSJ does not include. Woo would further note that Payne's report states that the limited liability company which owns the bank account in question, Summation Group, LLC ("Summation"), is itself in turn owned by The Van Woo Family Wealth Preservation Trust ("WPT"). *See* Exhibit 7 to MSJ, p. 16. Neither Summation nor the WPT were listed by Woo as part of his estate. *See* Exhibit 6 to MSJ, p. 5-6. The trustee in the Bankruptcy Case has not sought to challenge Woo's exclusion of these entities from the estate. Woo questions the materiality of a fact that deals with assets which are not part of the estate.

25. Woo disputes Bank's Fact No. 25. First, it is not a fact so much as it is a recitation of Mr. Payne's opinion. Second, Mr. Payne's report states that he bases his opinion on his healthcare industry experience. Mr. Payne's curriculum vitae does not state that he is an expert in the healthcare industry. *See* Exhibit 7 to MSJ, Appendix A. Third, Woo disputes that he is sophisticated in financial matters. Woo has no business education or training; he has always been just a physician. *See* Exhibit 3, p. 8:4-9:3. In fact, in addition to his employment as a physician in private practice, Woo is merely the healthcare provider in the various clinics in which he indirectly owns interests; Derek Prentice, the individual who owns the rest of the clinics, maintains the books and records for those clinics, oversees the billing and performs all business roles for those clinics. *See* Exhibit 2, ¶ 5. Woo also disputes Bank's Fact No. 25 in that it states that by serving as a trustee

of a trust he has been required to keep records and perform the accounting roles of a "Fiduciary Person." Exhibit 8 to the MSJ (which is cited to support Bank's Fact No. 25) does not define this term. Exhibit 7 to the MSJ defines a Fiduciary Person in describing Mr. Payne's qualifications and states that a Fiduciary Person is a "chief financial officer, chief restructuring officer and/or director for troubled companies." *See* Exhibit 7 to MSJ, p. 2, Art. I. Woo does not fit in this category.

26. Woo disputes Bank's Fact No. 26. Again, this "fact" is nothing more than Mr. Payne's opinion. Further, for the reasons previously discussed, Woo's use of the cash from his paychecks can be documented by looking to his paychecks, credit card statements and to the bank records of the Karen Woo Revocable Living Trust. *See* Exhibits 1.1, 2 and 2.1.

## ADDITIONAL RELEVANT UNDISPUTED FACT[5]

27. In this case and in the Bankruptcy Case, Woo has produced approximately 2,500 pages of documents to both the trustee in the Bankruptcy Case and to Bank in this case. This production included copies of Woo's federal and state tax returns for 2018-20. *See* Exhibit 2 at ¶ 6. Karen has additionally produced over 1,500 pages of documents to Bank. *See* Exhibit 1 at ¶ 3.

## ARGUMENTS AND AUTHORITIES

I. **Summary judgment standard.**

In order to prevail on the MSJ, Bank must show that "there is no genuine dispute as to any material fact and [Bank] is entitled to judgment as a matter of law."[6] "A dispute is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a fact is material when it might affect the outcome of the suit under the governing substantive law." *Obermeyer Hydro Accessories, Inc. v. CSI Calendering, Inc.*, 852 F.3d 1008, 1014 (10th Cir.

---

[5] This fact is referred to herein as "Additional Fact No. 27."
[6] *Fed. R. Civ. P.* 56, made applicable in this case by *Fed. R. Bankr. P.* 7056.

2017). As shown by Woo's Responses, Woo disputes almost all of Bank's alleged material facts. Where different ultimate inferences may "be drawn from the subsidiary facts contained in the affidavits, attached exhibits, and depositions submitted below ... the inferences ... must be viewed in the light most favorable to the party opposing the motion (for summary judgment). *Williams v. Borden, Inc.*, 637 F.2d 731, 738 (10th Cir. 1980).

II. **Standards for denial of discharge under Section 727(a)(3).**

Woo may only be denied a discharge under § 727(a)(3) if Bank can show that,

> [T]he debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.[7]

All inferences the Court draws from the admissible evidence in the MSJ and this response must be construed in Woo's favor, especially at the summary judgment stage. "In order to further the policy under the Bankruptcy Code of providing a debtor with a 'fresh start,' all objections to discharge 'should be construed strictly against the creditor and liberally in favor of the debtor.'" *In re Morris*, 302 B.R. 728, 731 (Bankr. N.D. Okla. 2003). At the trial on a complaint objecting to a discharge, Bank has the burden of proving its objection.[8] Moreover the Bank must prove each element of its claim by a preponderance of the evidence. *See In re Serafini*, 938 F.2d 1156, 1157 (10th Cir. 1991). Overall, the standard enunciated by the 10th Circuit and consistently applied by this Court is that "the party seeking denial of discharge must establish that the debtor failed to maintain and preserve adequate records and that the failure made it *impossible* to ascertain his financial condition and

---

[7] 11 *U.S.C.A.* § 727(a)(3).
[8] *Fed. R. Bankr. P.* 4005.

*material business* transactions." *In re Morris*, 302 B.R. 728, 736 (Bankr. N.D. Okla. 2003) (citing *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290) (emphasis in original).

      If Bank proves a prima facie case that Woo failed to maintain adequate records, then the burden shifts to Woo to prove that his failure to do so was justified. *See In re Stewart,* 263 B.R. 608, 615 (B.A.P. 10th Cir. 2001), *aff'd, In re Stewart*, 35 Fed. Appx. 811 (10th Cir. 2002). Woo's records do not need to be complete or as detailed as would be maintained by an accountant ("Records need not be so complete that they state in detail all or substantially all of the transactions taking place in the course of the business. It is enough if they sufficiently identify the transactions that intelligent inquiry can be made respecting them." *In re Bryan*, 612 B.R. 618, 625 (Bankr. N.D. Okla. 2020) (citing *Hedges v. Bushnell*, 106 F.2d 979, 982 (10th Cir. 1939)). Finally, the Court has wide latitude to determine whether the records produced by the debtor are sufficient. "Ultimately, '[i]t is up to the bankruptcy court's broad discretion to determine on a case by case basis whether the records produced by the debtor are sufficient.'" *In re Mitsopoulos*, 548 B.R. 620, 629 (Bankr. E.D.N.Y. 2016).

      Lastly, the MSJ cites to law which states that a sophisticated businessperson should be held to a higher standard than other debtors when it comes to the sufficiency of the record-keeping required. In making such a determination, "[t]he inquiry should include the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice." *In re Cacioli*, 332 B.R. 514, 518 (D. Conn. 2005), *aff'd, In re Cacioli*, 463 F.3d 229 (2d Cir. 2006). "Reliance upon a business partner to maintain records of the partnership's business activities should also be considered." *Id.*

**III.**    **Summary adjudication in this case would be inequitable to Woo**.

One important threshold consideration regarding the MSJ is that Woo did not voluntarily seek the protection of a bankruptcy proceeding. Bank initiated the Bankruptcy Case against Woo and now seeks to deny him a discharge due to his failure to maintain sufficient records, among other claims. Bankruptcy courts are courts of equity. "'[C]ourts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity,'" *In re Spoor-Weston, Inc.*, 139 B.R. 1009, 1012 (Bankr. N.D. Okla. 1992), *subsequently aff'd, In re Spoor-Weston, Inc.*, 13 F.3d 407 (10th Cir. 1993). It would be inequitable for Bank to force Woo into involuntary bankruptcy, then seek to deny him a discharge without a trial on the merits of Bank's claims based solely on disputed facts.

IV. **Bank should not be granted summary judgment**.

    a. **Woo should not be held to a higher standard than the average debtor.**

Bank begins its argument that Woo should be denied a discharge by contending that Woo must be held to a higher standard than that of the average debtor. Bank supports this contention only with Bank's Fact Nos. 25 and 26 (see MSJ, p. 18, first paragraph), which in turn are based solely on Mr. Payne's opinions as expressed in his report. Again, Woo challenges Mr. Payne's qualification as an expert in the areas at issue in this case. *See generally* Woo's Response Nos. 21-25. The MSJ bases Bank Fact No. 25 on Mr. Payne's "healthcare industry experience." His curriculum vitae included in his report does not establish any such experience. *See* Woo's Response No. 25. Woo also has serious concerns with the foundation for Payne's report. The MSJ states that Payne reviewed "well over 500 documents" in preparing the report but this is not necessarily true. *See* Woo's Response No. 22. As to the merits of whether Woo should be held to a higher standard than that of the average debtor, Woo is a physician but he is no businessman; either by education or by experience. *See* Woo's Response No. 25. Woo's business partner has always handled all of

10

the business aspects of their clinics while Woo focused on providing health care services. *Id.* Woo would ask the Court to take judicial notice of the general knowledge that many healthcare professionals are notoriously poor businesspeople. Furthermore, the business aspects of Woo's private practice are not complex; Woo treats his patients and is paid a salary to do so. *See* Woo's Response No. 25.

      **b.**      **The law does not require Woo to maintain a bank account.**

Bank's argument next turns to the fact that Woo doesn't maintain a bank account. References to that fact are littered throughout the MSJ as though that is the damning, material nail in Woo's proverbial coffin. Simply put, Woo is not required to maintain a bank account. "§ 727(a)(3) does not require a debtor to maintain a bank account; it simply requires that the debtor provide the trustee with the records he has, and if the debtor has no records, give an explanation." *In re Seung Chan Park*, 480 B.R. 627, 636 (Bankr. D. Md. 2012). It may be unusual in today's day and age to not have one but that fact alone does not make Bank's prima facie case. Moreover, the no bank account argument is mysteriously coupled in the MSJ with the repeated misstatements of Woo's testimony regarding how long he hasn't had one ("[Woo] has not used an individual bank account from the time that Bank obtained the Judgment against him up to the Petition Date."). That's not what Woo testified at his deposition. *See* Woo's Response No. 16. It's as though Bank expects the fact that Woo has no bank account coupled with its misstatements that he last had an account shortly after its judgment was entered to carry the day for it.

      **c.**      **Bank uses inflated amounts to support the MSJ.**

Throughout the MSJ, Bank repeatedly uses the sum $500,000. By way of example, the MSJ states that Woo "cashed well over $500,000 in paychecks" and "[he didn't keep a record] of what he did with more than $500,000 in cash" in addition to several other references to the sum.

11

The Bank apparently believes that by overstating the amount of cash received by Woo, the sheer size (and roundness?) of the sum will persuade the Court. As previously discussed, Woo did not receive over $500,000 in cash after paying his taxes, Bank's garnishment, and his portion of the family's expenses. The total amount was much less than that. *See* Woo's Response No. 16.

    d.  **Woo maintained proper records and has provided them to Bank.**

Bank's smoke and mirrors aside, the success or failure of its § 727(a)(3) claim comes down to whether Woo kept sufficient records for the trustee and his creditors to determine his financial condition as of the date of the order for relief in the Bankruptcy Case. The "fact" that Woo has not maintained any records from which his financial affairs may be ascertained is untrue. First, Woo has produced over 2,500 pages of personal and business records in this case to Bank. *See* Additional Fact No. 27. In response to a subpoena from the Bank, Karen has produced over 1,500 pages. *Id.* Although not strictly necessary to track Woo's use of his salary, Woo also produced his tax returns to Bank. *Id.* "Tax returns are quintessential items in a personal bankruptcy. It is not difficult to discern how a tax return would provide a creditor or a trustee with important financial information about a debtor: it provides substantial personal financial information such as income, expenses, and stock transactions." *Fox v. Miller, 589 B.R. 659, 665* (C.D. Cal. 2018), *aff'd sub nom. In re Fox*, 786 Fed. Appx. 688 (9th Cir. 2019).

  The level of record-keeping necessary to document Woo's financial affairs is not extensive. Woo is a physician and is paid a salary by his employer. His paychecks show his income for all the periods in question. *See* Woo's Response No. 16. A large part of the cash that Bank alleges is untraceable went to pay taxes and to Bank in the form of garnishments. *Id.* After his paychecks were reduced by these amounts, Woo would then pay his monthly credit card bills (prior to bankruptcy). *Id.* The remainder of his cash was then given to his wife. *Id.* Taken together, his

paychecks, credit card statements and his wife's trust's bank records allow Woo's creditors and the trustee to track his use of the cash he earned prior to the Bank putting him in bankruptcy. Woo's delivery of his remaining cash to his wife's trust also answers Bank's question regarding his SOFA listing $20,000 belonging to his wife's trust while only $35 belonged to Woo. In summary, Bank has failed to set forth a prima facie case that Woo failed to keep sufficient records to enable his creditors and the trustee to ascertain his financial condition prior to bankruptcy.

Should the Court believe that Woo's record-keeping is deficient, Woo would again offer that he is not by law required to keep a bank account and without an account, obviously there are no records to produce. Furthermore, since Bank has not established that Woo is a sophisticated businessperson, holding Woo to that standard would not be appropriate. As discussed above, Woo's employment as a physician is not a complex business for which extensive record-keeping is required. *In re Cacioli*, 332 B.R. 514, 518 (D. Conn. 2005), *aff'd, In re Cacioli*, 463 F.3d 229 (2d Cir. 2006). To the extent that he is an owner of businesses which require more extensive record-keeping, he relies on his business partner to maintain those records. *See* Woo's Response No. 25. He earns the majority of his income from his salary as a doctor in private practice; his paychecks document this. His is not a complex business.

## CONCLUSION

Based on the foregoing authorities and arguments, this Court should deny the MSJ and should instead grant summary judgment to Woo on Bank's claim to deny him a discharge based on 11 *U.S.C.* § 727(a)(3).

*/s/ Matthew T. Crook*
Patrick J. Mensching, OBA No. 6136
Matthew T. Crook, OBA No. 19441
Williams Center Tower II
Two West Second St., Suite 700
Tulsa, Oklahoma 74103
Telephone (918) 582-1211
Facsimile (918) 591-5360
pmensching@dsda.com
mcrook@dsda.com

*Attorneys for Defendant Van Woo*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of November, 2022 the undersigned electronically transmitted the foregoing document to the Clerk of the Court for the U.S. Bankruptcy Court for the Northern District of Oklahoma, using that Court's ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants in the above proceeding.

*/s/ Matthew T. Crook*

6193945.2